IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| SENTINEL INSURANCE COMPANY, LTD., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 1:19-cv-1395 (LMB/TCB) |
| ) | |
| VLM FOODS, INC., et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION

On October 1, 2021, after having heard oral argument on the parties' multiple dispositive motions, the Court issued an extensive opinion in which it granted plaintiff Sentinel Insurance Company, Ltd.'s ("Sentinel") motion for summary judgment as to its claim for express indemnity, denied defendants VLM Foods, Inc.'s ("VLM") and Patagonia Foods, LLC's ("Patagonia") cross-motions for summary judgment as to Sentinel's claims, and found VLM and Patagonia jointly and severally liable to Sentinel for $3,548,292.90, plus pre-judgment interest. The opinion left the issue of Sentinel's attorney's fees and costs incurred in this litigation for further briefing.

The same opinion granted Patagonia's motion for summary judgment on its crossclaim against VLM and found that VLM must indemnify Patagonia for Patagonia's liability to Sentinel. Patagonia's crossclaim for indemnification was based on a two-page Hold Harmless Agreement and Guarantee/Warranty of Product ("Agreement") that VLM issued to Patagonia and that provided for such indemnification. Left unresolved was VLM's crossclaim for indemnification filed against Patagonia based, in part, on a different paragraph in the same

Agreement.[1] VLM and Patagonia have now moved for summary judgment on VLM's crossclaim. For the reasons discussed in the October 1, 2021, opinion, which is fully incorporated in this opinion, and for the additional reasons discussed herein, VLM's motion for summary judgment [Dkt. No. 281] will be denied, and Patagonia's motion for summary judgment [Dkt. No. 287] will be granted.

## I. BACKGROUND

### A. Factual Background

This litigation arises out of a 2016 outbreak of hepatitis A virus ("HAV") linked to a batch of frozen strawberries that were consumed by customers of various Tropical Smoothie Café, LLC ("TSC") franchises. As discussed in the Memorandum Opinion, VLM and Patagonia were "upstream links in the frozen strawberry distribution chain." [Dkt. No. 276] at 1. In 2015, Patagonia agreed to supply a particular type of strawberry for use by TSC's franchises. Id. at 7. To obtain the frozen strawberries, Patagonia turned to VLM, a global frozen food vendor, processor, and distributor. Id. VLM, in turn, purchased the frozen strawberries from an Egyptian company, the International Company for Agricultural Production and Processing ("ICAPP"), and arranged for their delivery to Patagonia's warehouses in 2016. Id. at 2, 7-8.

As part of this arrangement, VLM provided Patagonia—at Patagonia's request—with the Agreement, a two-page document titled Hold Harmless Agreement and Guarantee/Warranty of Product.[2] Id. at 13. In the frozen fruit distribution industry, product guarantee agreements like the Agreement are common. Id. Although the Agreement was undated, it was written on VLM

---

[1] Also left unresolved was the issue of Patagonia's attorney's fees and costs arising from this litigation.

[2] The Court found this Agreement to apply to the frozen strawberries at issue. [Dkt. No. 276] at 24-25.

letterhead, signed by VLM's Director of Operations at its headquarters in Canada, and sent to Patagonia officials in California. Id. at 6, 13; [Dkt. No. 288] at 3. It opened by stating that VLM, the "Seller," "for value received, hereby represents and agrees as follows . . . ," and proceeded to guarantee that "[t]he articles contained in any shipment or delivery" from VLM to Patagonia, the "Buyer," will "not be adulterated or misbranded within the meaning of the Federal Food, Drug and Cosmetic Act." [Dkt. No. 282-1] at 1. The guarantee provision was followed by two indemnity provisions—one running from Seller (VLM) to Buyer (Patagonia), and the other running from Buyer (Patagonia) to Seller (VLM). The first provision provided, in relevant part:

> (2) Seller agrees to defend, indemnify and hold harmless Buyer and its employees, representatives, directors and customers (Individually an "Indemnitee") from all action [sic], suits, claims, demands and proceedings, ("Claims"), and any judgements, damages, losses, debts, liabilities, penalties, fines, costs and expenses (including reasonable attorney's fees), resulting therefrom whether arising out of contract, tort, strict liability, misrepresentation, violation of applicable law and/or any cause whatsoever:
>
> . . .
>
> (iii) Brought or commenced by any person or entity against any Indemnitee for the recovery of damages for the injury, illness and/or death of any person, or loss or damage of property arising out of or alleged to have arisen out of (a) the delivery, sale, resale, labeling, use or consumption of any Product provided Seller [VLM] is aware and advised in writing of any such resale, labeling, use or consumption of such Product or (b) the negligent acts or omissions of Seller; provided, however, that seller's indemnification obligations hereunder shall not apply to the extent that Claims are caused by the negligence of Buyer.

Id. The second indemnity provision provided, in relevant part:

> Buyer shall defend, indemnify and hold Seller harmless against any and all claims, damages, expenses, reasonable attorneys' fees, settlement costs and judgements arising out of any personal injury, bodily injury or property damage to a third party alleged to have been caused by the Products, except to the extent that such injury or damage was the result of Products not meeting [sic] being manufactured to meet Specifications, or the result of any latent defects in the Products caused by the negligence or willful misconduct of Seller. . . .

Id. at 2. The Agreement ended with the statement that it "shall be binding upon Seller with respect to each and every Product shipped or delivered to Buyer by Seller." Id. There was no analogous provision binding the Buyer (Patagonia), Patagonia did not sign the Agreement, and there was no signature line for Patagonia.

## B. Procedural History

As fully discussed in the previous Memorandum Opinion, the Court found that VLM and Patagonia are jointly and severally liable to Sentinel for the attorney's fees and costs it incurred to defend TSC in more than 25 lawsuits and settlements arising out of the HAV outbreak, as well as for the attorney's fees and costs it incurred in this litigation. [Dkt. No. 276] at 1, 32; see also [Dkt. No. 277] at 1. The Court also found that the Agreement

> is valid and enforceable, it applies to the frozen strawberries shipped to Patagonia by VLM, and the plain text of the [first] hold harmless provision requires VLM to indemnify and hold harmless Patagonia under the circumstances here, where the underlying injury claims were "alleged to have arisen out of . . . the delivery, sale, resale, labeling, use or consumption of any Product," and VLM was made "aware and advised in writing of any such resale, labeling, use or consumption of such products."

[Dkt. No. 276] at 31. Because neither Patagonia nor VLM moved for summary judgment on VLM's crossclaim at that time, the Court did not consider the second indemnity provision in its Memorandum Opinion.

## II. DISCUSSION

### A. Standard of Review

When considering cross-motions for summary judgment under Fed. R. Civ. P. 56, a court must "consider and rule upon each party's motion separately to determine whether summary judgment is appropriate as to each." Monumental Paving & Excavating, Inc. v. Pa. Mfrs.' Ass'n Ins. Co., 176 F.3d 794, 797 (4th Cir. 1999). Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of

4

law." Norfolk S. Ry. Co. v. City of Alexandria, 608 F.3d 150, 156 (4th Cir. 2010) (quoting Fed. R. Civ. P. 56(c)). A genuine dispute of material fact exists if "after reviewing the record as a whole, a court finds that a reasonable jury could return a verdict for the nonmoving party" on that issue, Dulaney v. Packaging Corp. of Am., 673 F.3d 323, 330 (4th Cir. 2012), while making all reasonable inferences in favor of the nonmoving party, Smith v. Gilchrist, 749 F.3d 302, 307 (4th Cir. 2014).

### B. Analysis

In its motion for summary judgment, VLM argues that Patagonia should indemnify it based on the Agreement or the common law. For the reasons discussed below, both arguments fail.

#### 1. Contractual Indemnification

VLM argues that the Agreement's second hold harmless provision requires Patagonia to indemnify VLM unless the HAV outbreak resulted from either the strawberries not meeting specifications or latent defects caused by VLM's negligence, and that neither of those exceptions applies here. The first problem with this argument is that it was made moot by the previous Memorandum Opinion, which found that VLM must indemnify Patagonia. Although VLM's crossclaim could have been dismissed at that time, it was not, because no party had moved for summary judgment on it, and VLM had not taken the position that it was entitled to indemnification under the second hold harmless provision. To the contrary, VLM vigorously argued that the Agreement was unenforceable, in direct conflict with its current position seeking to enforce the Agreement.

5

The second problem with VLM's argument is that even if it were not moot, it still fails on the merits. Under Virginia law,[3] "the cardinal rule in any action involving contract interpretation is that courts uphold the intent of the contracting parties as expressed through contractual language." Foothill Cap. Corp. v. E. Coast Bldg. Supply Corp., 259 B.R. 840, 844 (E.D. Va. 2001). Contractual language is construed according to its "plain and ordinary meaning," id., and "[i]n ascertaining the parties' intention regarding specific contract provisions, [courts] consider the document as a whole," Pocahontas Mining Ltd. Liab. Co. v. CNX Gas Co., 666 S.E.2d 527, 531 (Va. 2008). Consideration of the entire Agreement undercuts any notion that Patagonia must indemnify VLM. As the Court previously found, "the purpose of the [A]greement was to bind VLM and provide a guarantee and hold harmless agreement to Patagonia and its customers." [Dkt. No. 276] at 24. In the Court's view, VLM recognized that the Agreement was intended to benefit Patagonia by consistently arguing throughout this litigation that the Agreement was unenforceable.

Viewing the second indemnity provision in this context shows that VLM is not entitled to indemnification. That provision—the only one that purports to bind Patagonia—states that Patagonia shall indemnify VLM for any losses "arising out of any personal injury, bodily injury or property damage to a third party alleged to have been caused by the Products, except to the extent that such injury or damage was the result of Products not meeting [sic] being manufactured to meet Specifications, or the result of any latent defects in the Products caused by the negligence or willful misconduct of Seller." Because the damages here are "alleged to have

---

[3] Although the parties debate whether California or Virginia law applies, the Court already determined in the previous Memorandum Opinion that it would apply Virginia law to contract interpretation, and the parties do not present any new considerations that require the Court to revisit that ruling. [Dkt. No. 276] at 17 n.14.

6

been caused" by the frozen strawberries, this indemnity provision appears to require Patagonia to indemnify VLM for those damages unless one of the two exceptions applies.

Although neither party argues that the second exception applies, Patagonia correctly argues that the first exception applies because the frozen strawberries clearly did not meet specifications. VLM quibbles with the meaning of "Specifications," arguing that it was limited to the microbiological specifications listed on the purchase order sheet, which mentioned "E. coli, Salmonella, [and] Listeria" but not hepatitis A. Nonetheless, VLM's argument fails because, as Patagonia points out, the purchase order clearly stated that the "Product must meet USDA/FDA requirements," [Dkt. No. 282-3] at 2, and the Federal Food, Drug, and Cosmetic Act, which is enforced by the FDA, prohibits the introduction of "adulterated" food into U.S. commerce. 21 U.S.C. § 331(a). Food is "adulterated" if it "bears or contains any poisonous or deleterious substance which may render it injurious to health." 21 U.S.C. § 342(a)(1). Considering that HAV is a "poisonous or deleterious substance which may render [a food product] injurious to health," the strawberries provided to Patagonia by VLM were "adulterated" and did not meet the contract's product specifications. Accordingly, VLM's argument that there were no specifications relating to hepatitis A is unpersuasive.

VLM also argues, without much elaboration, that Patagonia must conclusively prove, rather than merely allege, that the products did not meet specifications, and that Patagonia has not done so. Although the exception does not speak of allegations, it also does not require conclusive proof, nor define how such proof would be determined. In the face of this ambiguity, the Court must construe the provision against VLM, the drafter of the Agreement. See Doctors Co. v. Women's Healthcare Assocs., Inc., 740 S.E.2d 523, 526 (Va. 2013). Had VLM intended to exempt Patagonia only upon conclusive proof, such as a final judgment that the products did

not meet specifications, it had ample opportunity to write that requirement into the Agreement.[4] In the absence of a contractual provision requiring a final judgment or some other form of conclusive proof, Patagonia's credible assertion that the product did not meet specifications is sufficient to invoke the exception. Therefore, as previously found, under the Agreement which it wrote, VLM must indemnify Patagonia for the damages it incurred in this civil action, and Patagonia is not obligated to indemnify VLM.

2. Common Law Indemnification

In the alternative, VLM argues that because it is not "primarily responsible" for the illnesses suffered by TSC customers, it should be indemnified by Patagonia under the common law. "Equitable indemnification arises when a party without personal fault, is nevertheless legally liable for damages caused by the negligence of another. Equitable principles allow the innocent party to recover from the negligent actor for the amounts paid to discharge the liability." Carr v. Home Ins. Co., 463 S.E.2d 457, 458 (Va. 1995). There is no evidence in this record even suggesting that Patagonia was negligent in any way, and VLM has failed to cite to any facts that suggest that Patagonia was negligent. Accordingly, there is no basis to find that Patagonia is liable to VLM under this doctrine.

---

[4] Patagonia also argues that requiring conclusive proof of the products not meeting specifications would essentially require it to successfully litigate the issue in court, and that Patagonia would therefore need to indemnify VLM until that litigation was concluded; however, that interpretation would conflict with the first indemnity provision, which states that VLM's duty to defend and indemnify Patagonia begins as soon as damage has been alleged to have arisen out of the consumption of the products. This is a separate, meritorious reason to conclude that VLM's interpretation is erroneous.

## III. CONCLUSION

For the reasons stated above, Patagonia's Motion will be GRANTED, VLM's Motion will be DENIED, and VLM's crossclaim will be DISMISSED by an Order to be issued with this Memorandum Opinion.

Entered this 19 day of May, 2022.

Alexandria, Virginia

/s/

Leonie M. Brinkema
United States District Judge

9